## KESTERSON & TELLE v. MARLOW.

No. 8019—Opinion Filed Nov. 14, 1916.

(161 Pac. 186.)

**1. Bailment—Bailee for Hire—Duty of Care.**

The bailee for hire must use at least ordinary care for the preservation of the thing bailed. Section 1109, Rev. Laws 1910.

**2. Same.**

Where the owner of a moving picture show moves a piano into his building for use therein, pays the owner thereof a salary to operate it, and a rental for the use of it, he is a bailee for hire of such piano, and is bound to exercise ordinary care for the preservation of it and is liable in damages for failure in such duty.

(Syllabus by Galbraith, C.)

Error from District Court, Atoka County; J. H. Linebaugh, Judge.

Action by Grace Marlow against Kesterson & Telle, begun in justice court and appealed by defendants to district court. There was judgment for the plaintiff, and defendants bring error. Affirmed.

J. G. Ralls and J. H. Gernert, for plaintiffs in error.

Humphreys & Cook, for defendant in error.

Opinion by GALBRAITH, C. Grace Marlow, the defendant in error, sued Kesterson & Telle, the plaintiffs in error, for damage to her piano which she alleged was caused by negligence in failing to take proper care of the piano while in their possession. The action was tried to a jury in a justice of the peace court, and a verdict returned for the plaintiff. On appeal to the district court another jury returned a verdict in her favor for $75. To review the judgment rendered upon this last verdict an appeal has been perfected to this court.

The facts, briefly stated, are as follows: Miss Marlow entered into a contract with one James, the proprietor of a moving picture show, at Atoka, to furnish music for the show on the following terms, namely, that she would furnish her own piano and operate it for $1 per night for her services and $1 per week for the use of the piano, payable at the end of each week. After this arrangement had been in effect for several months, James sold the show to the plaintiffs in error, they taking charge January 1, 1913. It is not clear that the plaintiffs in error made a new contract with Miss Marlow, but she understood from James that she was to continue to render the same services to them that she had rendered under James' management, and on the same terms. She rendered the services and collected the compensation at the end of each week, and continued to do this from January 1st until September 19th, when the show closed. When the plaintiffs in error took charge of the show, the piano was in the building where the show had been given, and it remained there until March, when the show was removed into an airdome owned by the plaintiffs in error. They moved the piano from the building and placed it in a shed room erected in the airdome for it and the moving picture machine. Owing to the faulty construction of this shed, and while therein, the piano was more or less exposed to the elements, the sunshine and the rain, greatly to its injury. It was a second hand piano, having been in use for some five years, and had been moved from town to town a number of times. The defendant in error paid $275 for it and sold it for $2.50, after this lawsuit was commenced. When moved to the airdome, it was in fairly good condition for a moving picture show piano, and, when the show closed in September, it was so deteriorated in value that it was practically worthless. After the show had closed, Miss Marlow requested Kesterson to move the piano to her home. He refused to do so, saying that it was her piano and she might do what she pleased with it. She said that it would cost $2.50 to have it moved and that, at that time, it was not worth that sum.

There is a sharp conflict in the testimony as to whether the plaintiffs in error made an express contract with Miss Marlow for the hire of the piano, but in the view we take of the case this is not important. There is no

conflict in the testimony to this extent, that the plaintiffs in error moved the piano into this building and paid rental for the use of it for many weeks, during which time it was damaged by being exposed to the elements.

The controlling question in this lawsuit is: Whose duty was it to care for the piano while it was in the airdome? On the one hand, it is contended that it was under the owner's control, and that if it was injured it was her own fault, and she alone is responsible for it. On the other hand, it is claimed that the piano was hired to the owners of the show, and that they placed it in their building and were required to use at least ordinary care to protect it from injury by the elements, and that they failed in this duty, and therefore are liable.

It being admitted that the plaintiffs in error paid rental for the use of the piano and that they placed it in their own building in order that it might be used for their show, under section 1108, Rev. Laws 1910, it would seem that they were bailees for hire, and under section 1109, Rev. Laws 1910, they were bound to take ordinary care for the preservation of the piano while in their building for this purpose. See Vogel & Son v. Braudrick, 25 Okla. 259, 105 Pac. 197. Whether they failed in this duty or not, and the extent of the injury occasioned thereby, were questions of fact for the jury to determine. The court in the instructions fairly covered the law applicable to the issues raised by the pleadings and the evidence, and advised the jury that the plaintiffs in error were only bound to use ordinary care, and if they failed in this duty they were liable for the injury to the piano that reasonably resulted on account thereof. The jury by their verdict found that there had been a failure in this duty and fixed the amount of the damages, and, there being evidence reasonably tending to support the verdict, the same ought to be sustained.

The judgment is therefore affirmed.

By the Court: It is so ordered.